FILED

January 27 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0432

DA 14-0432

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 23N

IN THE MATTER OF:

D.S.,

      A Youth in Need of Care.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DN 11-45
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Paul Sullivan, Measure, Sampsel, Sullivan & O'Brien, P.C.,
Kalispell, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

        Scott Twito, Yellowstone County Attorney, Richard Helm, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  December 31, 2014
Decided:  January 27, 2015

Filed:

                                 Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      A.S. appeals from the order of the Thirteenth Judicial District, Yellowstone County, denying her request to set aside the relinquishment of her parental rights to D.S.  The issue on appeal is whether the District Court erred when it denied A.S.'s motion to withdraw her relinquishment.  We affirm.

¶3      A.S. is the biological mother of two children, D.S. and C.P.[1]  The Department of Health and Human Services filed a petition to terminate A.S.'s parental rights on May 3, 2013.  In the summer of 2013, A.S. indicated that she would relinquish her parental rights.  In August 2013, she participated in relinquishment counseling with Danielle Metcalf.  A.S. later changed her mind and an involuntary termination hearing was held on November 4-6, 2013.  At the hearing, A.S. again indicated that she wished to relinquish her parental rights.  Ten days later, A.S. executed an "Affidavit of Birth Mother's Waiver of All Parental Rights, Relinquishment of Child, and Consent to Adoption."  The affidavit states that the relinquishment is "voluntary, irrevocable and is given freely with a clear mind.  I [A.S.] have not been unduly influenced by anyone in making this

---

[1] This appeal is limited to A.S.'s parental rights to D.S. A.S. does not challenge her relinquishment of parental rights to C.P.

2

relinquishment." On January 7, 2014, the District Court issued the order terminating A.S.'s parental rights to D.S. and C.P.

¶4 On January 21, 2014, A.S. moved to withdraw her relinquishment based on duress. In her affidavit, A.S. stated that she "felt badgered and confused" and mentions D.S.'s recent relocation from several group homes. On March 10, 2014, a hearing was held and A.S. testified. She claimed that Cindie Fitch, a CFS caseworker, had pressured her into relinquishing her parental rights. A.S. stated that she knew the legal ramification of relinquishing her parental rights, but felt pressured and fearful of Ms. Finch. On June 5, 2014, the District Court issued an order denying A.S.'s request to withdraw her relinquishment.

¶5 A parent's right to revoke a relinquishment is dictated by statute. *In re Adoption of S.R.T.*, 2011 MT 219, ¶ 11, 362 Mont. 39, 260 P.3d 177. A district court's interpretation and application of a statute is a conclusion of law, which we review for correctness. *S.R.T.*, ¶ 11 (citation omitted). We review a district court's findings of fact for clear error. *S.R.T.*, ¶ 12 (citation omitted).

¶6 On appeal, A.S. asserts that the District Court erred by limiting its analysis to § 42-2-417, MCA. A.S. argues that Montana law provides for two methods of setting aside a relinquishment: (1) statutory method using § 42-2-417, MCA, and (2) rescission under contract law.

¶7 A parent may surrender their parental rights by "executing a voluntary relinquishment and consent to adoption." Section 42-2-401(1), MCA. Because of the fundamental liberty interests involved, the law provides prerequisites that must be

satisfied prior to relinquishment, including at least three hours of counseling. Sections 42-2-408, -409, MCA. The relinquishment may not be conditioned on future visitation rights or ongoing communication with the child. Section 42-2-411(2), MCA.

¶8 By law, a relinquishment and consent to adopt is final and may not be revoked once an order has been issued terminating the parent's rights. Section 42-2-410, MCA. However, under limited circumstances, a parent may move to set aside their relinquishment pursuant to § 42-2-417, MCA. To prevail, the party must prove by clear and convincing evidence that the consent was obtained by fraud or duress. Section 42-2-417(1)(a), MCA.

¶9 In 1997, the Montana Legislature enacted § 42-2-417, MCA, which provides two specific grounds for revoking a relinquishment: fraud or duress. To the extent that cases prior to 1997 are inconsistent with the statute, the statute controls. It is undisputed that A.S. moved to revoke her relinquishment after the District Court issued its order terminating her parental rights. Therefore, the burden was on A.S. to prove by clear and convicting evidence that she acted under duress or fraud. Section 42-2-417(1)(a), MCA.

¶10 A.S.'s opening brief argues that the District Court erred in applying the Black's Law Dictionary definition of duress, but her reply brief concedes that the Black's Law Dictionary definition was not an error in itself. She maintains that the error lies in the failure of the District Court to apply the alternative contract law method. A close look at the various definitions of "duress" shows that the result would not differ under any definition.

4

¶11 Although not cited by A.S., Montana contract law defines "duress" as the unlawful confinement of a person, family member, or property, or the lawful but oppressive confinement of a person. Section 28-2-402, MCA. The most recent edition of Black's Law Dictionary is very similar to Montana law, defining duress as "the physical confinement of a person or the detention of a contracting party's property." *Black's Law Dictionary* 614 (Bryan A. Garner ed., 10th ed., West 2014). The District Court defined duress, using the sixth edition of Black's Law Dictionary, as:

> Any unlawful threat or coercion used by a person to induce another to act (or refrain from acting) in a manner he or she otherwise would not (or would). Subjecting a person to improper pressure which overcomes his will and coerces him to comply with demand to which he would yield if acting as a free agent. "Coercion" is defined as "Compelled to compliance, constrained to obedience or submission in a vigorous or forcible manner."

¶12 Applying either edition of Black's Law Dictionary or the Title 28, Chapter 2, MCA, definition, the District Court would reach the same result. The record clearly shows that A.S. failed to carry her burden of establishing, by clear and convincing evidence, that her relinquishment was obtained through duress. A.S. was represented throughout the proceedings and discussed the relinquishment documents with her attorney. She received counseling, was provided clarification when unsure, and recorded the counseling session to revisit in the future. As to Ms. Finch, she was not present when A.S. signed the papers and, by A.S.'s own testimony, did not threaten or force her to sign.

¶13 A.S.'s testimony strongly suggests that she is seeking to revoke her relinquishment because of D.S.'s current placement. Although A.S. relinquished rights to two children, she only claims duress for D.S. and not C.P. When asked to explain why she did not seek

5

to set aside the relinquishment as to C.P., A.S. stated, "Because I have contact with the foster family." Her distress over D.S.'s placement does not qualify as duress under any definition of the term.

¶14 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for memorandum opinions. The District Court's findings of fact are supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.

¶15 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JIM RICE